UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DEAN V. KRUSE and KRISTIN MCGRADE KRUSE, *Individually and on behalf of all others similarly situated*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO.: 1:10-CV-323-JD ) |
| GS PEP TECHNOLOGY FUND 2000 LP, GS PEP TECH 2000 ADVISORS LLC, and GOLDMAN SACHS & CO. LP, | ) ) ) ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Now before the Court is Defendants' Motion to Dismiss [DE 41, 42] Plaintiffs' Third Amended Complaint. Plaintiffs' counsel did not file a response. Based on the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint is hereby GRANTED IN PART and DENIED IN PART [DE 41].

## **I. INTRODUCTION**

Plaintiffs, Dean V. Kruse and Kristin McGrade Kruse ("Plaintiffs"), filed their original Complaint with Class Action Requested on September 13, 2010 [DE 1]. Because the Complaint lacked a jurisdictional basis, an Amended Complaint was ordered and filed soon thereafter [DE 4]. After Plaintiffs' original attorney withdrew his appearance [DE 13] and Plaintiffs' present attorney entered his appearance [DE 16], a Second Amended Complaint was filed in June 2011 [DE 18]. After several extensions and various motions, a Third Amended Complaint ("TAC") [DE 32] was filed on August 26, 2011. It is on the TAC for which Defendants Goldman, Sachs

& Co. LP, GS Pep Technology Fund 2000 LP, and GS Pep Tech 2000 Advisors LLC ("Defendants") now move to dismiss with prejudice [DE 41].

Relative to jurisdiction, Plaintiffs maintain that jurisdiction is proper pursuant to the Class Action Fairness Act ("CAFA"), under 28 U.S.C. § 1332(d) [DE 32, ¶ 4]. The CAFA gives federal district courts original jurisdiction over class actions in which (1) the aggregate amount in controversy exceeds $5 million, (2) any member of a class of plaintiffs is a citizen of a state different from any defendant ("minimal diversity"), and (3) the proposed class consists of 100 or more persons.[1] 28 U.S.C. § 1332(d)(2), (d)(5)(B), and (d)(6). Defendants agree that the Court has subject matter jurisdiction, but clarifies that under the CAFA, an unincorporated association, such as a limited liability company and a limited partnership, is deemed a citizen of the state where it has its principal place of business and the state under whose laws it is organized [DE 42 at 9, n.5]. *See* 28 U.S.C. § 1332(d)(10); *Kurth v. Arcelormittal USA, Inc.*, No. 2:09-cv-108-RM, 2009 WL 3346588 *7 n.2 (N.D. Ind. Oct. 14, 2009) (Miller, J.); *Bond v. Veolia Water Indianapolis, LLC*, 571 F. Supp. 2d 905, 909-12 (S.D. Ind. 2008) (Hamilton, J.); *see also Ferrell v. Express Check Advance of SC, LLC*, 591 F.3d 698 (4th Cir. 2010).

Under this analysis, there is minimal diversity jurisdiction. Plaintiffs are citizens of Indiana [DE 31, ¶ 4]. As Defendants confirm, GS Pep Technology Fund 2000 LP is a limited partnership organized under Delaware law, with its principal place of business in New York; GS Pep Tech 2000 Advisors LLC is a limited liability company organized under Delaware law, with its principal place of business in New York; and Goldman, Sachs & Co. is a New York limited

---

[1] It is true that Plaintiffs have yet to seek class certification, however, § 1332(d) applies to "any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8).

partnership, with its principal place of business in New York [DE 32, ¶ 1; DE 42 at 9 n.5]. Defendants note that while the citizenship of their limited partners or members is irrelevant for CAFA's minimal diversity analysis, they are Delaware and New York citizens for diversity purposes in any event. The aggregate amount in controversy exceeds five million dollars [DE 32, ¶ 4] as Plaintiffs alone invested $2.5 million and the class is believed to be several hundred [DE 32, ¶¶ 4, 12], factual contentions which Defendants do not contest [DE 32, ¶¶ 4, 12]. Given that the alleged investment with Defendant Goldman Sachs & Co., a leading global investment company, continued for a period of at least ten years and that Defendants concede the Court has jurisdiction, the Court finds that based on the factual allegations as alleged and the proposed class [DE 32], the Plaintiffs have sufficiently shown how this Court has original jurisdiction under the CAFA. 28 U.S.C. § 1332(d)(2). *See Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (noting that "[o]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, *cf. Bell Atlantic Corp. v. Twombly*, ---U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.").

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint when it fails to set forth a claim upon which relief can be granted. Generally speaking, when considering a Rule 12(b)(6) motion to dismiss, courts must inquire whether the complaint satisfies the "notice-pleading" standard. *Indep. Tr. Corp. v. Stewart Info. Services Corp.*, 665 F.3d 930, 934 (7th Cir. 2012). The notice-pleading standard requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide "fair

3

notice" of the claim and its basis. *Id.* (citing Fed. R. Civ. P. 8(a)(2)); *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citations omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). In determining the sufficiency of a claim, the court construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010) (citation omitted).

In recent years, the Supreme Court has adopted a two-pronged approach when considering a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Twombly*). First, pleadings consisting of no more than mere conclusions are not entitled to the assumption of truth. *Id*. This includes legal conclusions couched as factual allegations, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, if there are well-pleaded factual allegations, courts should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chi.*, 671 F.3d. 611, 615 (7th Cir. 2011) (citing *Iqbal* and *Twombly*). The complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Maddox*, 655 F.3d at 718 (citations omitted). However, a plaintiff's claim need only be plausible, not probable. *Indep. Tr. Corp.*, 665 F.3d at 935 (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery

is very remote and unlikely." *Id*. In order to satisfy the plausibility standard, a plaintiff's complaint must "supply enough fact to raise a reasonable expectation that discovery will yield evidence supporting the plaintiff's allegations." *Id*. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *see Iqbal*, 556 U.S. at 679 (citation omitted), and the Court will assess Plaintiffs' claims accordingly.

Furthermore, Plaintiffs must plead their accusations of fraud with particularity. Fed. R. Civ. P. 9(b); *Reger Dev., LLC v. Nat'l City Bank* 592 F.3d 759, 764 (7th Cir. 2010) (citing *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (stating that particularity requires the party to specify the "who, what, when, where, and how" of the alleged fraudulent act)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement is designed to discourage a "sue first, ask questions later" philosophy. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (citations omitted); *see Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005) (the particularity requirement "forces the plaintiff to conduct a careful pretrial investigation" and minimizes the extortionate impact that can come from a baseless fraud claim). Put another way, Rule 9(b)'s "purpose is to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a 'wide variety of potential conduct,' is given adequate notice of the specific activity that the plaintiff claims constituted the fraud so that the accused party may file an effective responsive pleading." *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999).

5

Rule 10(c) describes the type of materials that can be considered to be part of a pleading:

> A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.

Fed. R. Civ. P. 10(c). This means that a court can consider for purposes of a Rule 12 motion, documents that are attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claims. *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006); *see Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A motion under Rule 12(b)(6) can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice.") (citations omitted); *see also Carroll v. Yates*, 362 F.3d 984, 986 (7th Cir. 2004) (dismissal on the basis of facts in a written instrument attached as an exhibit to a pleading is proper only if the plaintiff relies upon it to form the basis for his claim or part of a claim); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (when a complaint refers to and rests on a contract or other document that is not attached to the complaint, a court might be within its rights to consider that document in ruling on a Rule 12(b)(6) motion to dismiss the complaint without converting the motion into one for summary judgment, so long as the authenticity of the document is unquestioned). Thus, where a complaint refers to a document but does not incorporate it, a party may submit a copy of the document to support or oppose a motion to dismiss as long as the document is "central" to the complaint. *See, e.g., Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

## III. FACTUAL BACKGROUND

Count I of the TAC alleges a claim for fraud [DE 32, ¶¶ 30-38] and Count II alleges a claim for breach of contract [DE 32, ¶¶ 39-42]. Both counts stem from an ill-fated investment Plaintiffs made in anticipation of their retirement [DE 32, ¶¶ 19-20].

**Allegations in the TAC**

Plaintiffs maintain that in 2000 they transferred from their savings $2,606,058.00 to invest in Defendants' GS PEP Technology Fund 2000, LP, a limited partnership ("the Fund"), which was sold and administered by Goldman, Sachs & Co. LP and GS Pep Tech 2000 Advisors LLC [DE 32, ¶¶ 1, 19]. Plaintiffs claim they were "assured that the future investment prospects for the Fund were excellent and that the Plaintiffs could anticipate a decent return on their investment towards their retirement." *Id*. Further, Plaintiffs were informed that they could "fully withdraw all of their initial investment, plus appreciation in the investment, on or after March 31, 2010 . . . [and] Defendants projected that the Plaintiffs' account would be worth over $10 million by the end of the ten (10) years of the Fund" [DE 32, ¶ 20]. These assurances induced Plaintiffs to invest into the Fund. *Id*.

Plaintiffs most recent statement from Defendants, received in July 2010, showed a balance of $758,180.81 [DE 32, ¶ 21]. The investment, claims Plaintiffs, was run in an unwise and imprudent manner, and that at no time did Defendants take any action to protect Plaintiffs' investment, nor did Defendants contact Plaintiffs to discuss moving their funds to a more conservative investment vehicle [DE 32, ¶¶ 23, 24]. Plaintiffs contend that these actions support their claim for fraud because Defendants knowingly made false material representations meant to induce Plaintiffs to invest in the Fund, and Plaintiffs had a right to rely on those representations

7

and in fact did rely on them [DE 32, ¶¶ 33-36]. This caused Plaintiffs to suffer "extensive financial damage" [DE 32, ¶ 37].

Plaintiffs' claim for breach of contract is similarly premised on their agreement with Defendants that this investment was only to be for a period of ten years, after which the balance would be disbursed to Plaintiffs upon their demand [DE 32, ¶¶ 40-41]. According to Plaintiffs, the date of disbursement was March 31, 2010, and despite their demand for disbursement of the decreased balance of their investment, Defendants offered a sum less than the amount that remained in the account and ultimately refused to disburse any sum of money [DE 32, ¶¶ 25-27, 42]. Plaintiffs did not attach any contract, agreement, or writing as an exhibit to their TAC for support, nor even explain the nature of any such contract, agreement or writing.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants filed a Motion to Dismiss the TAC contemporaneously with its memorandum in support [DE 41, 42]. Defendants maintain that the breach of contract and fraud claims must be dismissed because the "controlling documents" contradict Plaintiffs' claims [DE 42 at 2]. Defendants also maintain that Plaintiffs' claims cannot survive because they fail to comply with the pleading standard of Fed. R. Civ. P. 9(b). *Id*.

**Supplementation of the TAC's Allegations**

In support of the motion, Defendants attached three confidential exhibits to its Motion to Dismiss [DE 38, 39, 40]. Docket entry 38 is entitled "Subscription Booklet" and contains an investor questionnaire apparently filled out by Plaintiffs along with their purported signatures on a "Subscription Agreement and Investment Representations" form. Docket entry 39 is titled "Private Placement Memorandum" which appears to explain the terms of the Fund and contains no signatures. Docket entry 40 is a copy of an "Amended and Restated Agreement of Limited

Partnership" dated March 31, 2000 which also contains no signatures. Defendants allege that these exhibits actually form the basis of the claims alleged by Plaintiffs, and therefore Defendants argue that the Court can consider the documents in issuing its ruling.

The Court must reject Defendants' argument. In the first place, although cases like *Tierney* make it clear that documents attached to a complaint are part of it for all purposes, and suggest further that authentic documents referred to in a complaint that are central to a claim may also be consulted on a motion under Rule 12(b)(6), the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002).

In this case, Plaintiffs did not attach any exhibits to their TAC. *See Venture Assocs. Corp*, 987 F.2d at 431 ("A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so.") (citation omitted). Thus, Defendants attached exhibits which are purportedly referenced in and central to Plaintiffs' claims. But in fact, the opposite is true.

The documents provided by Defendants [DE 38-40] completely contradict the allegations in the TAC—in fact, this is the very reason Defendants provided the documents in support of their request for dismissal. Defendants explicitly admit that "Plaintiffs' claims in this lawsuit are contradicted by the very documents [provided by Defendants] . . . Plaintiffs' breach of contract and fraud claims must therefore be dismissed for failure to state a claim because the controlling documents [provided by Defendants] belie their claims and preclude the relief sought" [DE 42 at 2].

Specifically, Plaintiffs' claims focus on the alleged misrepresentations by Defendants (taken as true for purposes of this discussion) "that there investment was for no longer than a ten (10) year period" after which they could withdraw their investment, and "that the future investment prospects for the Fund were excellent and that the Plaintiffs could anticipate a decent return on their investment toward their retirement."[2] Yet Defendants' exhibits are offered to show that the opposite is true—that (1) Plaintiffs agreed to bear the economic risk of the Fund's investment for an indefinite period of time and that the investment could exceed ten years [DE 42 at 7-8], and (2) Plaintiffs were experienced investors who could bear a complete loss of their investment, understood the significant degree of risk of loss involved, and relied on no other representations or agreements other than those set forth in the Private Placement Memorandum [DE 42 at 4-7]. Defendants provide these documents as the basis of Plaintiffs' claims even though the TAC does not make any reference to or rely on the three exhibits or their contents. The TAC does not even reference a written agreement, let alone refer to the confidential documents attached by Defendants.

The Court realizes that the TAC concerns an investment made into the Fund by Plaintiffs in the year 2000, which appears to be the same subject matter of Defendants' exhibits. However, the TAC relies on alleged understandings and representations which purportedly created a contract and which contradict Defendants' exhibits. In fact, Defendants acknowledge the possibility that Plaintiffs may be relying on representations that are outside of the investment documents identified by Defendants [DE 42 at 23]. Thus, the Court is unable to infer at this stage of the litigation that Plaintiffs' claims were in fact based on Defendants' documents when

---

[2]Defendants acknowledge that these allegations form the basis of Plaintiffs' claims [DE 42 at 3 (citing portions of the TAC, DE 32)].

the documents completely contradict the allegations set forth in the TAC and Plaintiffs provide little information to explain the nature of the agreement; and thus, Defendants' exhibits were not necessarily mentioned in nor made central to Plaintiffs' claims. *See, e.g., Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1408 (7th Cir. 1993) ("It may be entirely true that a new [second] contract did not arise . . ., but [plaintiff] alleges to the contrary and for purposes of a 12(b)(6) dismissal, we must assume [plaintiff's] allegations as true."). For these reasons, the Court considers only the allegations in the TAC in resolving the dispute.[3] *Carroll*, 362 F.3d at 986 (dismissal on the basis of facts in a written instrument attached as an exhibit is proper only if the plaintiff relies upon it to form the basis of a claim).

## IV. DISCUSSION

Defendants seek to dismiss the claims alleged in the TAC for fraud (Count I) and breach of contract (Count II). Plaintiffs' breach of contract claim will be discussed first.

**Count II: Breach of Contract**

The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *See Rice v. Hulsey*, 829 N.E.2d 87, 89 (Ind. Ct. App. 2005).[4]

Plaintiffs claim that Defendants have breached an agreement with Plaintiffs whereby

---

[3]While the Court could convert the motion to dismiss into one for summary judgment, *see* Fed. R. Civ. P. 12(d), it declines to do so given Defendants' success in defeating the fraud claim and the possibility that the claim may be amended. *See infra*. Once the time for Plaintiffs to file such an amendment has lapsed, Defendants will have the opportunity to file a summary judgment motion on existing claims.

[4]Defendants indicate that they reserve the right to later argue that Delaware law applies, given the terms of the Partnership Agreement [DE 40], but admit that such a determination need not be made for purposes of the motion given that Indiana and Delaware law are basically the same relative to the state law claims asserted [DE 42 at 11 n.6]. The Court would note that the Partnership Agreement indicates that New York law is to apply [DE 40 at 77], but declines to engage in a of choice law analysis that is not ripe for consideration, especially given that this Court's review is limited by the allegations in the TAC for purposes of this motion.

11

Plaintiffs made a $2.6 million investment into the Fund which was sold and administered by Defendants Goldman, Sachs & Co. LP and GS Pep Tech 2000 Advisors LLC. Plaintiffs were informed by Defendants that the investment was to last for no longer than a ten year period. After the expiration of the ten years, Plaintiffs allege that Defendants agreed to disburse the funds to Plaintiffs upon demand by Plaintiffs. In spite of Plaintiffs demand upon Defendants made on or after March 31, 2010, Plaintiffs contend that Defendants have refused to disburse the decreased balance of Plaintiffs' investment and that Plaintiffs have suffered extensive financial damages as result.

Defendants rely on their attached exhibits to demonstrate that Plaintiffs have no claim for breach of contract because it is clear that those documents indicate that Plaintiffs' investment was of an indefinite duration [DE 42 at 11-13]. Since the Fund continues, Plaintiffs are not entitled to a final distribution. *Id.* Defendants also argue that a breach of contract claim cannot survive on the allegations that the investment did not result in a positive return because "the written language of the contract trumps any unidentified, purported oral representations to the contrary" [DE 42 at 14]. These arguments may be compelling if it turns out that the agreement cited by Plaintiffs is based upon the contracts provided by the Defendants.

However, the Court must confine its review to the allegations in the TAC, and not the contents of the documents relied on by Defendants. In construing the TAC in the light most favorable to Plaintiffs and accepting the well-pleaded facts as true, it is clear that Plaintiffs have identified as the basis of their claim the existence of a contract which was entered into by Defendants and Plaintiffs in 2000 for Plaintiffs' investment into the Fund. *See, e.g., Hi-Lite Prods. Co.,* 11 F.3d at 1408. Drawing inferences in Plaintiffs' favor, the TAC also supports the

12

inference that the contract was for a ten year period with disbursements to be made at the end of that ten year period upon Plaintiffs' demand. Further, Plaintiffs made such a demand for the existing balance of the investment, but it was rejected by Defendants, arguably placing them in breach and causing Plaintiffs to suffer loss.

While it is true that Plaintiffs point to no particular provision of a written document (or any agreement), a fair reading of the TAC can lead to the conclusion that some contract existed and Plaintiffs have sufficiently alleged the terms of that contract which they believe were breached by Defendants. The Court finds that Plaintiffs have adequately pled its breach of contract theory of relief and have satisfied the plausibility standard applicable to motions to dismiss as established by *Twombly/Iqbal*. In other words, Plaintiffs have narrowly pled factual content that allows the Court to draw the reasonable inference at this stage that Defendants are liable for the misconduct alleged.

**Count I: Fraud**

The essential elements of common law fraud are: (1) a material representation of past or existing facts which; (2) was false; (3) was made with knowledge or reckless ignorance of its falsity; (4) was made with intent to deceive; (5) was rightfully relied upon by the complaining party; and (6) proximately caused injury to the complaining party. *Am. Heritage Banco, Inc. v. McNaughton,* 879 N.E.2d 1110, 1115 (Ind. Ct. App. 2008) (citing *Bilimoria Computer Sys., LLC v. Am. Online, Inc.*, 829 N.E.2d 150, 155 (Ind. Ct. App. 2005)).[5] Actual fraud may not be based

---

[5]Other claims of fraud under Indiana law exist. For instance, one can claim constructive fraud, and unlike actual fraud, intent to deceive is not an element of constructive fraud; rather, the law infers fraud from the relationship of the parties and the surrounding circumstances. *Am. Heritage Banco, Inc. v. Cranston*, 928 N.E.2d 239, 246 (Ind. Ct. App. 2010) (citation omitted). Additionally, the torts of fraud and fraudulent misrepresentation are very similar. *Wise v. Hays*, 943 N.E.2d 835, 840 (Ind. Ct. App. 2011) (the elements of a claim for fraudulent misrepresentation are that: (1) the defendant made false statements of past or existing material facts; (2) the

13

on representations of future conduct, on broken promises, or on representations of existing intent that are not executed. *Id*. (citing *Wallem v. CLS Indus., Inc*., 725 N.E.2d 880, 889 (Ind. Ct. App. 2000)). And to show both a breach of contract and fraud, "a plaintiff . . . must prove that the breaching party committed the separate and independent tort of fraud and that such fraud resulted in injury distinct from that resulting from the breach of contract." *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, No. 15A01-1201-PL-23, 2012 WL 3332383 *7 (Ind. Ct. App. Aug. 15, 2012) (citing *Dean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010)).

In support of Plaintiffs' claim for fraud, they contend that Defendants engaged in fraudulent business and sales practices regarding Plaintiffs' investment in the Fund, and Defendants acted fraudulently in their use and control of the Fund. Plaintiffs allege that Defendants made false representations to them relative to how the Fund was performing and operating, the suitability of the Fund as an investment vehicle with excellent "future investment prospect[]" to finance their upcoming retirement, and that the investment would be "cashed out" after ten years. Plaintiffs claim at the time that Defendants made their representations to Plaintiffs concerning material past and existing facts, Defendants knew that the representations were not true, but still made them so as to induce Plaintiffs to invest in the Fund. Plaintiffs rightfully relied on those false representations and assurances. Plaintiffs believe that Defendants invested Plaintiffs' money unwisely and did not take any actions to protect the funds. Finally,

---

defendant made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) the defendant made the statements to induce the plaintiff to act upon them; (4) the plaintiff justifiably relied and acted upon the statements; and (5) the plaintiff suffered injury). Even considering these alternative claims, today's ruling would remain unchanged given the heightened pleading standard for all claims of fraudulent activity. *See, e.g., Pirelli Armstrong*, 631 F.3d at 446-47 (the dictates of Rule 9(b) apply to allegations of fraud, including fraud predicated on either a misrepresentation or an omission).

Plaintiffs allege that Defendants violated their duties as fiduciaries causing Plaintiffs to suffer a 71% decline in the value of their investment and extensive damages.

The Court omits the various arguments offered by Defendants in support of dismissal which rely on their attached documents. However, Defendants argue that Plaintiffs' fraud claim does not comply with the heightened pleading standard required by Fed. R. Civ. P. 9(b), a determination which can be made by looking solely at the allegations in the TAC.

"Particularity," for Rule 9(b) purposes, means that a plaintiff must ordinarily "describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story,'" although what gets included in that first paragraph may vary on the facts of a given case. *Pirelli Armstrong*, 631 F.3d at 441-43 (fraud may be pled based "on information and belief . . . so long as (1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions.") (citations omitted). The circumstances of fraud include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663 at 668 (7th Cir. 2008) (citation omitted).

Turning to the allegations in the TAC and accepting all well-plead factual allegations as true, the Court concludes that Plaintiffs have failed to plead fraud with the particularity required by Rule 9(b). Missing are the particulars. Plaintiffs fail to identify *which* of the Defendants made the "fraudulent representations with scienter" to Plaintiffs. Plaintiffs not only fail to identify the entity responsible for making the misrepresentations, they neglect to identify the individual actors who would have conducted business on behalf of those entities so that

Defendants are notified of their purported role in the fraud. *See Design Time, Inc. v. Synthetic Diamond Tech., Inc*., 674 F.Supp. 1564, 1569 (N.D. Ind. 1987) (Miller, J.) (noting that a complaint that attributes misrepresentations to all defendants, "lumped" together for pleading purposes, generally is insufficient) (citations omitted). Plaintiffs must identify which misrepresentations were attributable to which unincorporated Defendant entity so that Defendants are given adequate notice of the specific activity that Plaintiffs assert constituted the fraud and may file an effective responsive pleading. This is especially true when Plaintiffs clearly should have first hand knowledge of *who* made the misrepresentations directly to them. While the rules might require greater flexibility with regard to alleged misrepresentations made to potential class members, Plaintiffs' allegations are still deficient for other reasons.

Plaintiffs allege the *what*—that the alleged fraudulent representations consist of the Fund's performance and operation, its suitability as a ten year investment with excellent prospects, and Plaintiffs ability to access the Fund after ten years—but even these allegations relative to Defendants' conduct are generic and give Defendants little, if any, detail to assist them in responding. Plaintiffs further fail to sufficiently plead the *when*, *where*, and *how*. *See, e.g., AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615-17 (7th Cir. 2011) (finding that the detailed allegations presented in the complaint stated with particularity the circumstances constituting a scheme to defraud). Relative to the time frame of the misrepresentations, asserting that they occurred sometime between 2000 and 2010 is not sufficiently particular. While a specific date and time is not necessarily required, Plaintiffs must narrow the time frame and at least indicate when it is that each alleged misrepresentation occurred. *See, e.g., Hefferman v. Bass*, 467 F.3d 596, 601-02 (7th Cir. 2006) (finding that "some time in late August or early September 2003 late

16

at night—it was after midnight" sufficient under Rule 9(b)).  Further, Plaintiffs did not even attempt to state the place where these representations occurred or the method by which they were made.

Realizing that Plaintiffs may not personally know the specifics of the alleged misrepresentations that occurred to other potential class members, if Defendants lied to Plaintiffs as contended, then Plaintiffs should easily be able to recant the particulars of the misrepresentations made to them.  In fact, the Court is unable to discern whether the alleged fraud resulted in injury distinct from that resulting from the alleged breach of contract.

Defendants cannot be expected to properly defend themselves when only vague accusations of fraudulent activity are alleged by Plaintiffs, which renders the claim deficient under Rule 9(b).  Here, additional particularity will help ensure that Plaintiffs are not alleging fraud simply because they are upset that their investment went bad. *See CoMentis, Inc. v. Purdue Research Found.,* 765 F.Supp.2d 1092, 1110 (N.D. Ind. 2011) (Simon, C.J.).  Accordingly, the Court will grant Defendants' request to dismiss Count I and Plaintiffs will be afforded an opportunity to replead this claim.

## V.  CONCLUSION

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss [DE 41].  Defendants' request to dismiss Count I is GRANTED and Count I is DISMISSED WITHOUT PREJUDICE, while Defendants' request to dismiss Count II is DENIED.  Plaintiffs are given until **Friday, October 19, 2012**, to file an amended complaint including their claim for breach of contract and amending their claim for fraud in order to allege the particularities required; and if no such amendment is filed, this case will

17

proceed on the breach of contract claim as alleged in Plaintiffs' Third Amended Complaint.

SO ORDERED.

ENTERED: September 19, 2012

/s/ JON E. DEGUILIO
Judge
United States District Court